UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL LATION,<br><br>                                Plaintiff,<br><br>              -v-<br><br>FETNER PROPERTIES, INC, 1212 FIFTH AVENUE CONDOMINIUM, and THOMAS CHIU,<br><br>                                Defendants. | 17-CV-3276 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

      This action arises out of Defendant Thomas Chiu's alleged harassing and discriminatory conduct against Plaintiff Carl Lation, who works as a concierge in the Manhattan condominium in which Chiu is a resident-owner. (Dkt. No. 1 ("Compl.").) Lation filed suit against Chiu; 1212 Fifth Avenue Condominium ("1212 Fifth Avenue"), the condo association; and Fetner Properties, Inc. ("Fetner"), the management company. But Chiu—the source of the problem—has thus far failed to appear or to answer the Complaint.

      The parties agree that the dispute between Lation and 1212 Fifth Avenue/Fetner should be resolved in arbitration, but they disagree about how to resolve Lation's claims against Chiu. Lation moves for a default judgment against Chiu (*see* Dkt. No. 25), while 1212 Fifth Avenue and Fetner move to compel arbitration of *all* of Lation's claims—including those against Chiu. For the reasons that follow, Lation's motion for default judgment against Chiu is granted in part and denied in part, and Defendants' motion to compel arbitration is granted with respect to 1212 Fifth Avenue and Fetner but denied with respect to Chiu.

**I.    Background**

Carl Lation works as a concierge at 1212 Fifth Avenue Condominium, a luxury condominium on Manhattan's Upper East Side. (Compl. ¶¶ 50–54.) The Complaint details a variety of disturbing incidents in which Thomas Chiu, a resident of the condominium, harassed Lation while on duty. Over the course of many months, Chiu directed racist and homophobic comments and other profanities at Lation (Compl. ¶¶ 64, 68–73, 75–81, 92–95, 117–24, 160–66, 169–72); slapped Lation's hand as he was giving Chiu his mail (Compl. ¶¶ 144–49); and exposed his buttocks to Lation (Compl. ¶¶ 101–09). Lation alleges that Chiu's "outrageous . . . racially discriminatory . . . [and] homophobic conduct" created a hostile work environment and caused him to suffer "anxiety and humiliation, embarrassment, shame . . . stress . . . emotional trauma, psychological anguish and mental distress." (Compl. ¶¶ 178–79.)

Lation filed this action in May 2017. The Complaint alleges four causes of action: (1) violation of federal anti-discrimination laws, namely the Civil Rights Act of 1866, the Thirteenth Amendment to the U.S. Constitution, and Title VII of the Civil Rights Act of 1964 ("Count One"); (2) violation of the New York City Human Rights Law ("Count Two"); (3) intentional infliction of emotional distress ("Count Three"); and (4) tortious interference with an employment contract ("Count Four"). (Compl. ¶¶ 188–99.)

Chiu was served with the Summons and Complaint via personal service on May 16, 2017. (Dkt. No. 11.) But despite significant efforts by Lation and the Court, Chiu has failed to defend the action against him. Chiu received three letters from Lation's counsel on June 12, June 30, and July 8, 2017, alerting Chiu to the litigation and requesting that he appear in the case. (Dkt. No. 26 & Exs. A–C.) The Court also issued two separate warnings, on July 18 and September 12, 2017, ordering Chiu to appear and submit a response. (Dkt. Nos. 23, 27.) Receiving no response from Chiu, Lation moved for default judgment on September 11, 2017

(Dkt. No. 25), and served Chiu with a copy of the motion for default judgment via first-class certified mail on September 14, 2017 (Dkt. No. 30).  The Clerk of Court issued a Certificate of Default as to Defendant Chiu on September 20, 2017.  (Dkt. No. 31.)

The Court then received two letters from Chiu, dated October 6 and October 8, 2017.  In the letters, Chiu stated that he does not know Carl Lation, that he is "not sure what [he is] facing for this lawsuit and what the charges are," and asked the Court to "please explain the details [of] this matter."  (Dkt. Nos. 32, 33.)  In response, the Court directed Chiu to appear for a conference and to submit a written answer to Lation's allegations.  (Dkt. No. 34.)  The Court warned Chiu that if he failed to appear at the conference, "a default judgment will be entered against you."  (*Id.* at 1.)  Chiu did not appear, and the Court has not heard from Chiu since.  As of the date of this Order, Chiu has not appeared, responded to the Complaint, or responded to the motion for default judgment.

Meanwhile, 1212 Fifth Avenue and Fetner have jointly moved to compel arbitration.  (Dkt. No. 39.)  Lation does not oppose the motion to compel arbitration of his claims against 1212 Fifth Avenue and Fetner, but he does oppose their request to compel arbitration of his claims against Chiu.  (Dkt. No. 43 at 1.)

## II.     Motion To Compel Arbitration

Pursuant to the Collective Bargaining Agreement ("CBA") between Lation's union and the Realty Advisory Board, all relevant parties have agreed to arbitrate Lation's claims against 1212 Fifth Avenue and Fetner.  (*See* Dkt. No. 43 at 1.)  Consequently, the Court need only decide the proper forum for Lation's claims against Chiu.[1]

---

[1]      Defendants argue that the arbitrator, not this Court, should decide whether Lation's claims against Chiu are subject to arbitration under the CBA.  The Court concludes that the CBA's arbitration provision does not "explicitly incorporate rules that empower an arbitrator

3

The answer to that question is simple. Despite the parties' extensive briefing on whether Chiu *could* compel arbitration based on his CBA with his employer, the fact is that Chiu has not sought such relief from this Court. Indeed, Chiu is not party to the CBA. (*See* Dkt. No. 41-2.) Even assuming that Chiu and Lation had an enforceable arbitration agreement, the existence of such an agreement would not deprive this Court of jurisdiction.[2] And the Court will not *sua sponte* compel arbitration, especially when Chiu—the supposed beneficiary of his co-defendants' motion to compel arbitration—has given no indication that he would consent to be bound by the decision of an arbitrator. *Accord PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.*, No. 14 Civ. 764, 2015 WL 1442487, at *3 n.2 (S.D.N.Y. Mar. 27, 2015) ("Neither party seeks to compel arbitration of [the plaintiff's] claims . . . , and the Court declines to do so *sua sponte*."); *Lefkowitz v. Reissman*, No. 12 Civ. 8703, 2014 WL 925410, at *8 (S.D.N.Y. Mar. 7, 2014) ("[T]he Court appreciates that enforcing an arbitration clause *sua sponte* might be inappropriate in certain situations—such as . . . when neither party has explicitly requested arbitration . . . ."); *Amiron Dev. Corp. v. Sytner*, No. 12 Civ. 3036, 2013 WL 1332725, at *3 (E.D.N.Y. Mar. 29, 2013) ("[N]otwithstanding the strong federal policy favoring arbitration, the Court has no authority to *sua sponte* enforce an arbitration provision. Therefore, the Court will not . . . address[] the applicability of the arbitration provision here absent a formal motion to compel." (citations omitted)); *In re Arbitration Between Standard Tallow Corp. & Kil-Mgmt. A/S*, 901 F.

---

to decide issues of arbitrability" and thus does not provide "clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Consequently, Defendants have not overcome the "general presumption that the issue of arbitrability should be resolved by the courts." *Id.*

  [2]  The right to arbitrate is waivable. *See, e.g.*, *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998).

Supp. 147, 151 (S.D.N.Y. 1995) ("The court . . . does not have before it a proper petition to compel arbitration . . . and the court refuses to provide such relief *sua sponte*.").

Put simply, Chiu has not moved to compel arbitration, so the Court will not compel arbitration of the claims against Chiu. In contrast, with the consent of all relevant parties, the Court grants the motion to compel arbitration with respect to all claims against 1212 Fifth Avenue and Fetner, and the Court further grants the motion to stay the proceedings against 1212 Fifth Avenue and Fetner pending the outcome of the arbitration.

### III. Motion for Default Judgment Against Defendant Chiu

Because the Court declines to compel Lation to arbitrate his claims against Chiu, it must resolve Lation's motion for default judgment.

#### A. Legal Standard

A party "against whom a judgment for affirmative relief is sought" is in default when he "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). "[A] default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability." *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).

Because "a default is an admission of all well-pleaded allegations against the defaulting party," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004), "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in [his] favor," *Belizaire*, 61 F. Supp. 3d at 344. However, because a party in default does not admit conclusions of law, a district court must "determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Id.* (alterations in original) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

5

B. **Employment Discrimination Claims Under Federal and City Law**

The allegations in the Complaint cannot establish Chiu's liability as a matter of law under federal or city employment discrimination laws. Both Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law ("NYCHRL") provide a cause of action against an employer who engages in employment discrimination. *See* 42 U.S.C. § 2000e-2(a); Admin. Code of N.Y.C., § 8-107(1). But Chiu is not Lation's employer.

Under both the federal and city statute, an individual must exercise some degree of control over an employee to qualify as his employer. For purposes of defining an employer under Title VII, courts consider the thirteen factors laid out by the Supreme Court in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730 (1989).[3] "Although '[n]o one of these factors is determinative,' 'the common-law element of control is the principal guidepost that should be followed.'" *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2006) (alteration in original) (citations omitted) (first quoting *Reid*, 490 U.S. at 752, then quoting *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 448 (2003)); *see also Kology v. My Space NYC Corp.*, 177 F. Supp. 3d 778, 781 (E.D.N.Y. 2016) (explaining that although "[u]nder Title VII, courts construe 'the term employer functionally, to encompass persons who are not employers in conventional terms,'" the putative employer must "nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment"

---

[3] These factors are: "the hiring party's right to control the manner and means by which the product is accomplished[;] . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Reid*, 490 U.S. 730, 751–52 (footnotes omitted).

6

(quoting *Laurin v. Pokoik*, 2004 WL 513999, at *8 (S.D.N.Y. Mar. 15, 2004))). Similarly, under the NYCHRL, "common-law principles . . . determine who may be liable as an employer . . . , with greatest emphasis placed on the alleged employer's power 'to order and control' the employee in his or her performance of work." *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 186 (2017);[4] *see also Brankov v. Hazzard*, 36 N.Y.S.3d 133, 134 (N.Y. App. Div. 1st Dep't 2016).

Chiu is a resident of the condominium and an owner of one unit in the building—nothing more. Chiu does not supervise or direct Lation's work, nor does he possess the power to hire or fire Lation, nor does he control Lation's benefits or compensation. Despite the egregiousness of his alleged conduct, Chiu is not Lation's employer simply by virtue of owning property in the building that employs Lation. *See Holmes v. Roth*, 11 Cal. App. 4th 931, 936 (1992) (holding that a condominium owner is not a doorman's employer because "there is no evidence that [the owner] exercises the control of an employer over an employee").[5]

Lation also asserts a cause of action under the Civil Rights Act of 1866, 42 U.S.C. § 1981. This claim is not well developed in the Complaint. However, to the extent that Lation's § 1981 claim relies on a theory of employment discrimination or termination of an employment contract, it similarly fails because Chiu is not Lation's employer. *See, e.g.*, *Pagan v. N.Y. State Div. of Parole*, No. 98 Civ. 5840, 2002 WL 398682, at *5 (S.D.N.Y. Mar. 13, 2002) ("Courts

---

[4] Although *Griffin* described the definition of "employer" under the New York State Human Rights Law, "courts generally treat the state and city Human Rights Laws as comparable." *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 471 (S.D.N.Y. 1996).

[5] For similar reasons, Lation has not stated a claim against Chiu under the Thirteenth Amendment. Lation has not alleged that Chiu compelled his service through "the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)) (internal quotation mark omitted).

commonly analyze the sufficiency of [§ 1981 employment] claims in the same manner as Title VII claims, reaching the same result.").

Therefore, the Court cannot grant Lation default judgment as to any of his employment discrimination claims against Chiu.

### C. Tortious Interference with Employment Contract Under New York Law

As with Lation's employment discrimination claim, the Complaint does not establish Chiu's liability as a matter of law for tortious interference with an employment contact. To establish a claim for common-law tortious interference, a plaintiff must show that the alleged tortfeasor induced a third-party to breach a contract. *See, e.g.*, *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996) ("Tortious interference with contract requires . . . defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom[.]"); *see also Anderson v. Aset Corp.*, 416 F.3d 170, 171 (2d Cir. 2005) (affirming dismissal of a tortious interference claim because the plaintiff "failed to plead the breach required by New York law").

The well-pleaded allegations do not establish a breach in this case: Lation's employment was never terminated. *See, e.g.*, *Cohen v. Davis*, 926 F. Supp. 399, 403 (S.D.N.Y. 1996) (collecting cases). Without a breach, Lation cannot state a claim for tortious interference under New York law.

### D. Intentional Infliction of Emotional Distress Under New York Law

The Complaint does adequately plead a claim for intentional infliction of emotional distress ("IIED") against Chiu. Under New York law, "[t]he tort [of IIED] has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). The

8

"extreme and outrageous conduct" requirement is a strict standard. *See id.* at 122. However, "accept[ing] as true all of the factual allegations of the non-defaulting party and draw[ing] all reasonable inferences in [his] favor," *Belizaire*, 61 F. Supp. 3d at 344, the Court concludes that Lation has sufficiently alleged that Chiu's extended campaign of harassment and bullying went far "beyond the bounds of decent behavior" and was "sufficiently outrageous to warrant the imposition of liability." *Roach v. Stern*, 675 N.Y.S.2d 133, 135–36 (App. Div. 2d Dep't 1998).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to compel arbitration and is GRANTED with respect to claims against Defendants 1212 Fifth Avenue Condominium and Fetner Properties, Inc., and DENIED with respect to claims against Defendant Chiu.

Proceedings against Defendants 1212 Fifth Avenue Condominium and Fetner Properties, Inc. are hereby STAYED pending the outcome of the arbitration.

Plaintiff's motion for default judgment against Defendant Chiu is GRANTED with respect to Count Three of the Complaint and DENIED with respect to Counts One, Two, and Four of the Complaint. The Court will schedule an inquest on damages in a separate order.

The Clerk of Court is directed to close the motions at Docket Numbers 25 and 39.

SO ORDERED.

Dated: December 22, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTIES BY CHAMBERS*